CASE NO. 3:21-02268-S

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

HIGHLAND CAPITAL MANAGEMENT LP

(Debtor)

THE DUGABOY INVESTMENT TRUST AND
GET GOOD TRUST

(Appellants)

v.

HIGHLAND CAPITAL MANAGEMENT LP

(Appellee)

On appeal from the United States Bankruptcy Court for the Northern District of Texas, Dallas Division

**ORIGINAL APPELLANT BRIEF FILED ON BEHALF OF
THE DUGABOY INVESTMENT TRUST AND THE GET GOOD TRUST**

Filed by Heller, Draper & Horn, LLC
Douglas S. Draper
Leslie A. Collins
Michael E. Landis
650 Poydras Street, Suite 2500
New Orleans, Louisiana 70130
Telephone: (504) 299-3300
Email: ddraper@hellerdraper.com
Email: lcollins@hellerdraper.com
Email: mlandis@hellerdraper.com

{00376784-1}

## **CORPORATE DISCLOSURE STATEMENT**

Pursuant to Rule 8012 of the Federal Rules of Bankruptcy Procedure, and without waiver of any defenses/objections that it may have, Defendants Dugaboy Investment Trust and the Get Good Trust ("Appellants") state as follows:

> No publicly-held company owns 10% or more of the Dugaboy Investment Trust, nor does it have a parent corporation; and

> No publicly-held company owns 10% or more of the Get Good Trust, nor does it have a parent corporation.

# TABLE OF CONTENTS

## Contents

TABLE OF CONTENTS ................................................................................................................ iii

TABLE OF AUTHORITIES ......................................................................................................... iv

JURISDICTIONAL STATEMENT ............................................................................................... 1

STATEMENT OF ISSUES PRESENTED ON APPEAL .............................................................. 2

STATEMENT OF FACTS AND PROCEEDINGS BELOW ........................................................ 2

SUMMARY OF ARGUMENT ...................................................................................................... 5

ARGUMENT .................................................................................................................................. 5

    A.    Appellants' Standing ........................................................................................................ 5

    B.    The Requirement to File 2015.3 Reports is Mandatory and Does Not Expire at the Effective Date .................................................................................................................. 6

    C.    Not Requiring the 2015.3 Reports Goes Against the Purpose of Rule 2015.3 ................ 8

CONCLUSION ............................................................................................................................. 10

CERTIFICATE OF COMPLIANCE ............................................................................................ 12

## **TABLE OF AUTHORITIES**

**CASES**

*Matter of Linn Energy, L.L.C.*,
　　936 F.3d 334 (5th Cir. 2019). ...................................................................................2

*In re: Summit Fin., Inc. Debtor(s).*,
　　No. 8:21-BK-12276-SC, 2021 WL 5173331 (Bankr. C.D. Cal. Nov. 5, 2021) ........7, 8

**STATUTES AND RULES**

11 U.S.C. § 341................................................................................................................2

28 U.S.C. § 158................................................................................................................1

28 U.S.C. § 1334..............................................................................................................1

Fed. R. Bankr. P. 2015.3........................................................................................... *ibid*

**OTHER AUTHORITIES**

Official Bankruptcy Form 426........................................................................................8

Pub. L. No. 109-8 § 419(b) (2005) ................................................................................7

## JURISDICTIONAL STATEMENT

Appellants, Get Good Nonexempt Trust ("Get Good") and Dugaboy Investment Trust ("Dugaboy" and together with Get Good, "Appellants" or the "Trusts") file this original Appellants' Brief regarding their appeal from a final order issued by the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court"). This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 158 & 1334 and Rules 8001 et. seq. of the Federal Rules of Bankruptcy Procedure.

## STATEMENT OF ISSUES PRESENTED ON APPEAL

1. Whether the Bankruptcy Court erred in dismissing as moot the Appellants' *Motion to Compel Compliance with Bankruptcy Rule 2015.3* [ROA Vol. 2, p. 0421] (the "Motion to Compel") based solely on the fact that the Effective Date of the Debtor's Plan of Reorganization had occurred. This is an issue of law and is subject to *de novo* review. *Matter of Linn Energy, L.L.C.*, 936 F.3d 334, 340 (5th Cir. 2019).

## STATEMENT OF FACTS AND PROCEEDINGS BELOW

On October 16, 2019 (the "Petition Date"), Highland Capital Management, L.P. (the "Debtor") filed a voluntary petition for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the U.S. Bankruptcy Court for the District of Delaware, Case No. 19-12239 (CSS) (the "Bankruptcy Case"). On December 4, 2019, the venue of this case was transferred to the Bankruptcy Court for this District.

On July 16, 2020, the Bankruptcy Court entered an order authorizing the Debtor to employ James P. Seery, Jr. as Chief Executive Officer and Chief Restructuring Officer of the Debtor. Mr. Seery continues to act in that capacity.

On February 3, 2021, almost sixteen months after the Petition Date and seven months after the Bankruptcy Court appointed an Independent Board and Mr. Seery as Chief Restructuring Officer to oversee the Debtor, the Court held a hearing (the "Confirmation Hearing") to confirm the Debtor's *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)* (the "Plan"). At the Confirmation Hearing, it was discussed that in the sixteen months since the Petition Date, the Debtor had not once filed a report as required under Rule 2015.3 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") despite Rule 2015.3's requirement that every six months, beginning seven days before the meeting of creditors under 11 U.S.C. § 341, the Debtor *must* file a report indicating the value,

operations, and profitability of each non-debtor entity in which the Debtor holds a substantial or controlling interest.

When questioned about this glaring derogation of the responsibilities imposed upon a Debtor by the Bankruptcy Rules, Mr. Seery's explanation was simply that that particular responsibility "fell through the cracks."[1] When pressed further on the issue, Mr. Seery acknowledged that not only had no 2015.3 report been filed, but that the Debtor also never sought leave from the Bankruptcy Court to postpone the deadlines for filing the 2015.3 reports.[2] Mr. Seery further implied that, with the lapse having been brought to his attention, the Debtor would then take steps to remedy the lapse. "If it hadn't fallen through the cracks, it would have been something we recalled and we would have done something with it."[3] Yet, even after the Debtor's failure had been brought to light, it still did not file a 2015.3 report nor did it request from the Bankruptcy Court an extension to file such reports or to alter the requirement.

On February 22, 2021, the Bankruptcy Court confirmed the Debtor's Plan over numerous objections, including the fact that no 2015.3 report had been filed.

On April 29, 2021, after nearly three months of the Debtor's continued neglect of its Rule 2015.3 duties, the Appellants filed the Motion to Compel. It was only in opposition to the Motion to Compel that the Debtor finally addressed its duty under Rule 2015.3 when it requested that the Bankruptcy Court defer the reporting requirements under Rule 2015.3 until September 1, 2021, by which date the Debtor anticipated its Plan would become effective.[4]

---

[1] Transcript from Confirmation Hearing, Day 2, ROA Vol. 4 p. 0863.

[2] ROA Vol. 4 p. 0864.

[3] ROA Vol. 4 p. 0864.

[4] *Debtor's Opposition to Motion to Compel Compliance with Bankruptcy Rule 2015.3 Filed by Dugaboy Investment Trust and Get Good Trust* [ROA Vol. 2 p. 0436] (the "Debtor's Opposition").

In the Debtor's Opposition, it raises several excuses for its failure to follow the Bankruptcy Rules, but ultimately the Bankruptcy Court ruled in favor of the Debtor on the argument that the Appellants waited too long to object despite the lack of a deadline in the Bankruptcy Rules for a party in interest to raise the issue of compliance and the whole issue became moot after the Effective Date of the Plan.  Essentially saying, "You should have said something earlier, but too bad now."

At the conclusion of the hearing on the Motion to Compel, the Bankruptcy Court stated: "I'm not going to grant the relief being sought today, but I will continue the hearing to a date in early September."[5]  The Bankruptcy Court explained its decision to continue as follows: "Now, obviously, I'm continuing this to September because, if we don't have an effective date by early September, well, context matters, maybe that causes me to view this in a whole different light. But that is the ruling of the Court."[6]

Following the hearing, there was a minute entry on the Bankruptcy Court docket stating "Motion continued for another hearing in early September … If Effective Date occurs before then, matter will be moot; if Effective Date has not occurred by then, court will consider motion further."[7]

The Effective Date occurred on August 11, 2021, and on September 7, 2021, the Bankruptcy Court entered an *Order Denying Motion to Compel Compliance with Bankruptcy Rule 2015.3* [ROA Vol. 1, p. 0012] (the "<u>Order</u>"), which denied the Motion to Compel as moot solely on account of the occurrence of the Effective Date.

---

[5] Transcript of Hearing on Motion to Compel, June 10, 2021, ROA Vol. 5, p. 1120.

[6] *Id.* ROA Vol. 5, p. 1121–22.

[7] Docket Sheet No. 2442, ROA Vol. 1, p. 0357.

**SUMMARY OF ARGUMENT**

The wording of Rule 2015.3 is clear and unambiguous. There is no requirement that all motions to compel compliance with the rule be filed prior to the Effective Date. There is no provision that renders compliance with Rule 2015.3 moot post-effective date. Yet, the Bankruptcy Court decided without legal precedent that so long as no one says anything about it before the effective date of a plan of reorganization, a debtor does not have to comply with Rule 2015.3. There is no support for this theory anywhere in the Bankruptcy Code, Bankruptcy Rules, or elsewhere and the Bankruptcy Court erred in ordering the Motion to Compel moot based solely upon the occurrence of the Effective Date.

**ARGUMENT**

A.  **Appellants' Standing**

Although not directly addressed in the Bankruptcy Court's Order, at the hearing on the Motion to Compel, the Bankruptcy Court questioned the standing of Appellants to bring the Motion to Compel.[8] The Dugaboy Trust has an equity interest in the Debtor, which gives it an interest in the post-effective date proceedings involving the reorganized debtor. While that residual interest in the reorganized debtor may ultimately prove to be worthless, it exists nonetheless. Further, the Trusts also have ownership interest in several of the entities for which Rule 2015.3 reports should have been filed.

The confirmed Plan calls for significant releases and exculpations including some involving the entities that would be included in the 2015.3 reports. As such, the only way for the Trusts to ascertain their rights and how those rights are affected by the Debtor's actions as investment manager to several of the 2015.3 entities is to see the 2015.3 reports.

---

[8] See, ROA Vol. 5, p. 1088.

The last point on this issue that needs to be made is that there really should not be a standing issue. The Bankruptcy Rules require these reports and the disclosures within them regardless of who wants to see them. The reports are a systematic safe-guard that was put in place by the drafters of the Bankruptcy Rules and so long as a party is a "party in interest," which the Trusts certainly are, they have a right to see those reports.

### B. The Requirement to File 2015.3 Reports is Mandatory and Does Not Expire at the Effective Date

Rule 2015.3 states, in relevant part:

> **(a)   Reporting Requirement**.   In a chapter 11 case, the trustee or debtor in possession *shall* file periodic financial reports of the value, operations, and profitability of each entity that is not a publicly traded corporation or a debtor in a case under title 11, and in which the estate holds a substantial or controlling interest…
>
> **(b)   Time for Filing; Service.**   The first report *required* by this rule *shall* be filed no later than seven days before the first date set for the meeting of creditors under § 341 of the Code. Subsequent reports *shall* be filed no less frequently than every six months thereafter, until the effective date of a plan or the case is dismissed or converted. …

Fed. R. Bankr. P. 2015.3 (emphasis added).

The use of the words "shall" and "required" make clear that Rule 2015.3 is unequivocal. While Rule 2015.3 allows a debtor to request that the bankruptcy court vary the requirements in subsection (d), the Debtor never requested a variance until after the Motion to Compel was already filed as if it was skating through and hoping no one would say anything. Unfortunately for the Debtor, the Appellants did say something. Further, subsection (f) to Rule 2015.3 states: "Unless the court orders otherwise, the pendency of a request under subdivisions (c), (d), or (e) of this rule shall not alter or stay the requirements of subdivision (a)."[9] That further illustrates

---

[9] Fed. R. Bankr. P. 2015.3(f).

the point that Rule 2015.3 reporting requirements are not to be taken lightly and are intended to have weight behind them. It takes a full notice and hearing to alter the requirements, not a mere, "oops, it slipped through the cracks, but that's ok because we're so close to the effective date."

Additionally, there is nothing in Rule 2015.3 that suggests that the requirement to make the semi-annual reports expires upon the effective date of a plan of reorganization. This is made clear when contrasted with section 1104 of the Bankruptcy Code which does set an expiration date on when a party in interest may request the appointment of a chapter 11 trustee. Section 1104 allows a party in interest to make the request "[a]t any time after the commencement of the case, but before confirmation of a plan…"[10] Section 1104 uses the same language regarding the appointment of an examiner. It allows such an appointment "at any point before the confirmation of a plan, on request of a party in interest or the United States trustee."[11] Under section 1104, it is clear that once a plan has been confirmed, the right to request the appointment of a trustee or examiner is waived.

Rule 2015.3, on the other hand, does not use the limiting language. While Rule 2015.3 does state that the duty to produce the reports *ceases* upon the effective date, it does not state that the duty disappears entirely as if it never existed in the first place, nor does it deprive a party in interest from requesting that the Debtor comply with Rule 2015.3.

A related case was recently decided out of the Bankruptcy Court for the Central District of California. In *In re Summit Financial, Inc.*, counsel for the Debtor included a disclaimer in connection with its schedules and statement of financial affairs, which the bankruptcy court summarized as follows:

---

[10] 11 U.S.C. § 1104(a).

[11] *Id.* at 1104(c).

{00376784-1}　　　　　　　　　　　　7

> Put generically, the Disclaimer notified the Court and all parties in interest that the DIP's position was (1) it had no duty to insure that the Debtor's Schedules or Statement of Financial Affairs were accurate; (2) it had no duty to update or correct its Schedules or Statement of Financial Affairs; and (3) even if the Debtor was to make changes to its Schedules or Statement of Financial Affairs, it had no duty to tell any creditor that changes were made, whether affected by the change or not.

*In re: Summit Fin., Inc. Debtor(s).*, No. 8:21-BK-12276-SC, 2021 WL 5173331, at *1 (Bankr. C.D. Cal. Nov. 5, 2021). The bankruptcy court barred the language on the grounds that it was in blatant contradiction to the Bankruptcy Rules. "Moreover, the failure to notify an affected party of an amendment … clearly violates the applicable bankruptcy rule, which provides that 'the debtor shall give notice of [any] amendment [to the schedule of assets] to the trustee and to any entity affected thereby.'" *Id.* at *2 (citing Bankr. R. 1009) (case cite omitted).

By the same reasoning, the Debtor's contention that "Oops, it slipped through the cracks, but because we are close to the effective date, it does not matter" clearly contradicts the plain language of Bankruptcy Rule 2015.3 and should not be accepted.

### C.   Not Requiring the 2015.3 Reports Goes Against the Purpose of Rule 2015.3

When Rule 2015.3 was enacted in 2005, the congressional report stated that the purpose of Rule 2015.3 "shall be to assist parties in interest taking steps to ensure that the debtor's interest in any entity . . . is used for the payment of allowed claims against debtor." Pub. L. No. 109-8 § 419(b) (2005). In the Debtor's Response to the Motion to Compel the Debtor made the assertion that because the Creditors Committee was already getting the information that would otherwise be disclosed in the Rule 2015.3 reports, it was unnecessary for the Debtor to file them in the record for all parties of interest to examine.[12] The Bankruptcy Court seemed to give this

---

[12] See, *Debtor's Opposition to Motion to Compel Compliance with Bankruptcy Rule 2015.3 Filed by Dugaboy Investment Trust and Get Good Trust*, at ¶ 3, ROA, Vol. 2, p. 438 (the "Debtor's Response"); and

credence at the hearing on the Motion to Compel when questioning counsel for the Creditors Committee.

> THE COURT: Okay. So I'm asking you, is all of this protocol that was in place, I mean, is it reasonable for me to think maybe that's the reason you all never pressed the 2015.3 issue, because you were getting a full look, as best you could tell, and more? You were getting more information, perhaps than these reports would have provided even. Is that fair for me to think?
>
> MR. CLEMENTE: It is fair for you to think that, Your Honor…[13]

However, this goes directly against the stated purpose behind Rule 2015.3, which is to give *all* parties in interest an opportunity to ensure that the Debtor was not hiding assets in non-debtor affiliates or otherwise using non-debtor affiliates to the detriment of the estate. The fact that the Creditors Committee had access to the information does not satisfy the requirement that *all* parties in interest be provided with the information provided in the 2015.3 reports.[14]

At the hearing on the Motion to Compel, the Bankruptcy Court questioned the utility of requiring the 2015.3 reports so close to the Effective Date.

> THE COURT: On that point, can I just ask, what is the utility? I mean, let's say we're one – okay. Let's say we're one month away from the effective date. Let's say we're three months away from the effective date. What is the utility at this point? There's a confirmed plan. Now, granted, it's on appeal. But, you know, what – what would you […] do with this information at this point? We have a confirmed plan.[15]

In addition to pointing out the already mentioned fact that the rule says what it says, counsel also advised the Bankruptcy Court that Exhibit E to the Rule 2015.3 official form

---

[13] ROA, Vol. 5, p. 1110.

[14] This point ties back into the standing issue addressed above. The Trusts are parties in interest in this Bankruptcy Case and, as such, are parties for whose benefit Rule 2015.3 was drafted.

[15] ROA Vol. 5, p. 1081.

requires disclosure of any instance where a subsidiary has paid or incurred a liability to a person who would have an administrative expense claim against the Debtor.[16] Exhibit E to Official Form 426, for Rule 2015.3 reports states in the instructions:

> Describe any payment made, or obligations incurred (or claims purchased), by the Controlled Non-Debtor Entity in connection with any claims, administrative expenses, or professional fees that have been or could be asserted against any Debtor.[17]

Applications for administrative expense claims are handled post-effective date. Therefore, the information contained in the 2015.3 reports is, in fact, useful post-effective date and does not become moot upon the occurrence of the effective date. Counsel also pointed to Exhibit B (addressing tax sharing agreements) and Exhibit C (addressing inter-entity claims between non-debtor affiliates), both of which contain information that would be relevant in hashing out post-effective date settlements of what amounts are due to which entities.[18] After hearing counsel's explanation of how Rule 2015.3 would serve a purpose post-effective date, the Bankruptcy Court even seemed to acknowledge that this information would, in practice, be useful post-effective date and support the underlying purpose of the rule.[19]

Yet, despite this concession from the Bankruptcy Court, it still ruled that compliance with Rule 2015.3 after the Effective Date was unnecessary and that the Motion to Compel was moot.

## **CONCLUSION**

The Bankruptcy Court's Order denying the Motion to Compel as moot based solely upon the occurrence of the Effective Date not only goes against the plain and direct language of the

---

[16] ROA Vol. 5, p. 1082–84.

[17] Official Bankruptcy Form 426, "Periodic Report About Controlled Non-Debtor Entity's Value, Operations, and Profitability," Exhibit E, p. 11.

[18] ROA Vol. 5, p. 1084.

[19] See ROA Vol. 5, p. 1084–85.

rule, but it also defeats the very purpose for which the rule was enacted. All creditors and parties in interest are entitled to know what goes on in the Debtor's affiliated non-debtor entities at least on the basic level that is provided by the disclosures required under Rule 2015.3. The information provided by these reports does not become meaningless after the effective date; rather it takes on new importance in distributing funds of the Debtor and determining who is entitled to administrative fees (if any). Therefore, the Bankruptcy Court erred in denying the Motion to Compel as moot based solely on the fact that the Effective Date had occurred.

**CERTIFICATE OF COMPLIANCE**

In compliance with Rules 8014 and 8015, I hereby certify that:

1) This document complies with the type-volume limit of Fed. R. Bankr. P. 8015(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. Bankr. P. 8015(g), this document contains 3090 words.

2) This document complies with the typeface requirements of Fed. R. Bankr. P. 8015(a)(5) and the type-style requirements of Fed. R. Bankr. P. 8015(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word, version 2014 in size 12, Times New Roman.

Dated November 15, 2021:

                                                */s/Douglas S. Draper*
Douglas S. Draper, La. Bar No. 5073
ddraper@hellerdraper.com
Leslie A. Collins, La. Bar No. 14891
lcollins@hellerdraper.com
Michael E. Landis, La. Bar No. 36542
mlandis@hellerdraper.com

Heller, Draper & Horn, L.L.C.
650 Poydras Street, Suite 2500
New Orleans, LA  70130
Telephone: (504) 299-3300
Fax: (504) 299-3399
*Attorneys for Appellants*
*The Dugaboy Investment Trust and*
*The Get Good Nonexempt Trust*